# MAYER | BROWN

Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
United States of America

T: +1 202 263 3000
F: +1 202 263 3300

mayerbrown.com

**Andrew J. Pincus**
Partner
T: +1 202 263 3220
F: +1 202 263 5220
APincus@mayerbrown.com

July 29, 2024

<u>VIA ECF</u>

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
601 Market Street
Philadelphia, PA 19106

Re:    *Anderson v. TikTok Inc.*, No. 22-3061

Dear Ms. Dodszuweit:

I write pursuant to the Court's order directing the parties to address *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024).

The principal issue in this appeal is whether 47 U.S.C. § 230 bars Plaintiff's claims because subjecting Defendants to liability based on the use of algorithms to select the third-party content delivered to consumers "treat[s]" Defendants "as the publisher or speaker" of that third-party content.

Defendants explain in their brief that text, precedent, and logic demonstrate that the use of algorithms to select the third-party content provided to users qualifies as "publish[ing]" activity within the meaning of Section 230. Resp. Br. 24-46. Plaintiff argues that user-specific algorithmic recommendations are not analogous to decisions made by, for example, newspaper publishers regarding which letters to the editor or opinion pieces to publish—and therefore are not protected by Section 230. Opening Br. 26-32; Reply Br. 13-32.

The Court's decision in *NetChoice* addresses the First Amendment, and not Section 230, but the Court's decision provides additional support for Defendants' position.

*NetChoice* involved constitutional challenges to state laws regulating criteria used by social-media companies in selecting the third-party content to deliver to their customers. 144 S. Ct. at 2393. The Supreme Court held that the lower courts applied the wrong standard in determining whether the plaintiffs demonstrated that the state laws were facially unconstitutional. *Id.* at 2394. It then went on to explain how First Amendment principles apply to laws regulating social-media platforms' use of algorithms to curate content delivered to users.

In that context, the Court squarely rejected the distinction that Plaintiff seeks to draw here. The Court explained that social-media platforms use algorithms to

"make choices about what third-party speech to display and how to display it. They include and exclude, organize and prioritize—and in making millions of those decisions each day, produce their own distinctive compilations of expression." 144 S. Ct. at 2393. "[T]he essence of that project is something this Court has seen before. Traditional publishers and editors also select and shape other parties' expression into their own curated speech products." *Id.*

The Court thus made clear that the use of algorithms to curate the third-party content provided to users is equivalent to "[t]raditional publish[ing]." 144 S. Ct. at 2393. Because Anderson's claims seek to hold Defendants liable for exercising that publishing function—compiling, organizing, and presenting third-party content to TikTok users—those claims are barred by Section 230.

Similarly, in its First Amendment analysis, the Court concluded that its precedents holding that the First Amendment protects edited compilations of third-party content in more traditional contexts—a printed document, a parade, and cable television—apply to platforms' user-specific compilations of such content. 144 S. Ct. at 2399-406. As the Court put it, "[n]ew communications media differ from old ones in a host of ways," but "analogies to old media" are appropriate in this context. *Id.* at 2403.

Plaintiff may attempt to distinguish *NetChoice* by citing the footnote reserving decision with respect to "feeds whose algorithms respond solely to how users act online—giving them the content they appear to want, without any regard to independent content standards." 144 S. Ct. at 2404 n.5; *see id.* at 2410 (Barrett, J., concurring). TikTok's algorithm, as described in the complaint, does not fall within that reservation.

First, the complaint's allegations describe an algorithm indistinguishable from those addressed in *NetChoice*. The Supreme Court explained that Facebook's News Feed and YouTube's homepage operate by "present[ing] a user with a continually updating stream of other users' posts" including news articles and videos. 144 S. Ct. at 2403. They "deliver[] a personalized collection of those stories" and "an individualized list of video recommendations." *Id.* The algorithms' "selection and ranking [of third party content] is most often based on a user's expressed interests and past activities. But it may also be based on more general features of the communication or its creator." *Id.*

The complaint here alleges that TikTok's algorithm operates in precisely the same manner. The algorithm takes account of a user's interests and activities but also excludes some categories of content. *See* A28 (Compl. ¶¶ 53-55) (alleging that the "algorithm 'delivers content to each user that is likely to be of interest to that user'" and that third-party content "'found to depict things like graphic medical procedures or legal consumption of regulated goods . . . may not be eligible for recommendation'" (quoting *How TikTok Recommends Videos #ForYou*, TikTok (June 18, 2020), https://newsroom.tiktok.com/en-us/how-tiktok-recommends-videos-for-you/) (TikTok, *For You*)).

The document quoted in the complaint explains additional features that operate independently of the user's expressed interest. TikTok "works to intersperse diverse types of content along with those you already know you love" to give users "additional opportunities to stumble upon new content categories, discover new creators, and experience new perspectives and ideas"; and "videos that have just been uploaded or are under review, and spam content . . . may be ineligible for recommendation." TikTok, *For You*.[*]

TikTok engages in the same activity that the Supreme Court found protected under the First Amendment. It "[d]ecide[s] on the third-party speech that will be included in or excluded from a compilation—and then organiz[es] and present[s] the included items"—which the Court held "is expressive activity of its own" that "results in a distinctive expressive product." 144 S. Ct. at 2402.

Second, the Supreme Court's reservation came in the context of First Amendment analysis; the Court put off deciding whether an algorithm that "respond[s] solely to how users act online" qualifies as protected expressive activity. 144 S. Ct. at 2404 n.5. But the question under Section 230 is different: whether the platform is acting as a "publisher." And there can be no doubt that providing readers with the content they want is the quintessential activity of a publisher. After all, the role of a publisher is to take actions that promote sales of its publication, and giving readers what they want to read is an obvious way to achieve that goal.

Moreover, *NetChoice*'s First Amendment analysis leaves little doubt that when the Court does address the issue, it will conclude that algorithms focused on identifying content of interest to users are protected by the First Amendment. The Court explained that "[a]n entity 'exercising editorial discretion in the selection and presentation' of content is 'engaged in speech activity,'" 144 S. Ct. at 2402 (citation and alterations omitted), and that social media platforms "are in the business, when curating their feeds, of combining 'multifarious voices' to create a distinctive expressive offering," *id.* at 2405 (citation omitted).

There is no fixed method for selecting content likely to interest a user. The way that a particular platform designs its algorithm to achieve that goal creates a "distinctive expressive offering"—the platform's unique method of selecting third-party content most likely to interest its users. 144 S. Ct. at 2402. And "[a] private party's collection of third-party content into a single speech product . . . is itself expressive, and intrusion into that activity must be specially justified under the First Amendment." *Id.* at 2400. The editorial choice to focus on providing content that will interest their users does not distinguish a platform from countless other for-profit

---

[*] The Court may consider the entire document cited in the complaint. *See OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (on a 12(b)(6) motion, the court considers "documents incorporated into the complaint by reference" (internal quotation marks omitted)).

entities—such as book and magazine publishers—whose editorial and curatorial choices are protected by the First Amendment.

Finally, Plaintiff may invoke *NetChoice*'s conclusion that a platform's curation of third-party content is "expressive" for First Amendment purposes to support her claim that curation produces first-party speech excluded from Section 230. That argument, raised for the first time on appeal, is wrong. Resp. Br. 46-52. Newspaper publishers select third-party content to interest their readers—nullifying Section 230 protection based on an implicit "message" integral to publishing would make the statute self-defeating, preserving liability whenever Section 230 applies. Congress did not enact a meaningless provision. Moreover, *NetChoice* confirms such a claim is barred by the First Amendment's protection of the use of algorithms to curate delivery of third-party content. 144 S. Ct. at 2406.

Plaintiff also could try to invoke Justice Barrett's statement that "a social-media platform's foreign ownership and control over its content-moderation decisions might affect whether laws overriding those decisions trigger First Amendment scrutiny." 144 S. Ct. at 2410. But Defendants here—TikTok Inc. and ByteDance Inc.—are both U.S. companies. A21 (Compl. ¶¶ 13, 17). Even so, Section 230 contains no exclusion for interactive computers services owned or controlled by foreign persons or corporations. Finally, the case cited by Justice Barrett—*Agency for International Development v. Alliance for Open Society International, Inc.*, 591 U.S. 430 (2020)—held only that "foreign organizations operating abroad have no First Amendment rights." *Id.* at 436. The Court did not address speech within the United States.

The Court should affirm the district court's judgment dismissing this action.

Respectfully submitted,

/s/ *Andrew J. Pincus*

Andrew J. Pincus

*Counsel for Defendants-Appellees*
*TikTok Inc. and ByteDance Inc.*

Enclosure

cc:  Counsel of Record (via ECF)